# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **JONATHAN HITT** | § | |
| | § | |
| **V.** | § | **A-17-CV-289-SS** |
| | § | |
| **MARSHA McLANE  as Executive Director** | § | |
| **of the Texas Civil Commitment Office, et al.** | § | |

## INTERIM REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:     THE HONORABLE SAM SPARKS
        UNITED STATES DISTRICT JUDGE

Before the Court are: Plaintiff's Second Motion to Amend Complaint (Dkt. No. 34); Defendant Travis County Sheriff's Office's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure Rules 12(b)(1) and 12(b)(6) (Dkt. No. 25); Defendants Texas Civil Commitment Center, Correct Care Recovery Solutions, LLC and Brian Thomas' Motion to Dismiss under Federal Rule 12(b)(6) (Dkt. No. 11), and Plaintiff's Response (Dkt. No. 29); Defendant McLane's Partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Dkt. No. 12) and Plaintiff's Response (Dkt. No. 28); and Plaintiff's Motion for Partial Summary Judgment on Procedural Due Process Claim (Dkt. No. 43). On October 6, 2017, the District Court referred the above-styled case to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B), Federal Rule of Civil Procedure 72 and Rule 1(d) of Appendix C of the Local Rules.

## I.  GENERAL BACKGROUND

### A.    Hitt's Underlying Criminal Conviction

Jonathon Irving Hitt, also known as "Father Jeremiah," was a monk at the Christ of the Hills Monastery, a monastery affiliated with the Russian Orthodox Chruch, in Blanco County, Texas

during the late 1990's.[1]  S.S., a fourteen year old boy at the time of Hitt's trial in 1999, lived at the monastery off and on between the ages of nine and twelve.  S.S.'s mother brought S.S. to the Monastery because "[s]he felt the schooling there and the surroundings might be the answer to the difficulties S.S. had experienced in the first and second grades of school in Houston and in a fatherless home." *Hitt*, 53 S.W.3d at701.  Several months after he left the monastery in November 1997, S.S. told  the Blanco County District Attorney that Hitt had raped him nine times during the time he lived there.  In July 1999, a jury found Hitt guilty of five counts of indecency with a child by sexual contact and three counts of indecency with a child by exposure pursuant to Texas Penal Code § 21.11.  The jury assessed ten years' imprisonment for each count of indecency by contact and three years' imprisonment for each count of indecency by exposure.  The sentences were made to run concurrently.

On July 26, 2001, the Third Court of Appeals of Texas affirmed the judgment. *See Hitt v. State*, 53 S.W.3d 697 (Tex. App.– Austin 2001, pet. ref'd).  The Texas Court of Criminal Appeals refused Hitt's petition for discretionary review on February 13, 2002.  On his subsequent state habeas writ, The Texas Court of Criminal Appeals denied Hitt's application without written order on the findings of the trial court after hearing. *See Ex parte Hitt*, Appl. No. 61, 415-01 at 53-63.  Hitt then filed a federal habeas writ pursuant to 28 U.S.C. § 2254, and on January 17, 2008, Judge Sparks denied that application.  *See* Dkt. No. 27 in *Hitt v. Quarterman*, A-05-CV-618 SS (W.D. Tex. Jul. 8, 2005).  On June 25, 2009, the Fifth Circuit denied Hitt's Motion for a Certificate of Appealability. *Hitt v. Quarterman*, No-08-50108 (5th Cir. Jun. 22, 2009) (Dkt. No. 35).

---

[1] The full factual description of the case can be found in the Third Court of Appeals' opinion in *Hitt v. State*, 53 S.W.3d 697 (Tex. App.– Austin 2001, pet. ref'd).

**B.     The Texas Sexually Violent Predators Act**

In 1999, the Texas Legislature enacted the Civil Commitment of Sexually Violent Predators

Act ("SVP Act"), TEX. HEALTH & SAFETY CODE ANN. § 841.001-.151, having found that:

> [A] small but extremely dangerous group of sexually violent predators exists and that
> those predators have a behavioral abnormality that is not amenable to traditional
> mental illness treatment modalities and that makes the predators likely to engage in
> repeated predatory acts of sexual violence. The legislature finds that the existing
> involuntary commitment provisions of Subtitle C, Title 7, are inadequate to address
> the risk of repeated predatory behavior that sexually violent predators pose to society.
> The legislature further finds that treatment modalities for sexually violent predators
> are different from the traditional treatment modalities for persons appropriate for
> involuntary commitment under Subtitle C, Title 7. Thus, the legislature finds that a
> civil commitment procedure for the long-term supervision and treatment of sexually
> violent predators is necessary and in the interest of the state.

*Id.* at § 841.001.  Under the statute, a sexually violent predator ("SVP") is a "repeat sexually violent

offender" who "suffers from a behavioral abnormality that makes the person likely to engage in a

predatory act of sexual violence.*" Id.* at § 841.003(a).  A "behavioral abnormality" is "a congenital

or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the

person to commit a sexually violent offense, to the extent that the person becomes a menace to the

health and safety of another person." *Id.* at § 841.002(2).

The SVP Act created a multidisciplinary team to determine whether a person who is serving

a sentence for a sexually violent offense may be a repeat sexually violent offender.  The Texas

Supreme Court has explained the process as follows:

> The Texas Department of Criminal Justice ("TDCJ") or the Texas Department of
> Mental Health and Mental Retardation ("TDMHMR") must notify the
> multidisciplinary team of the anticipated release of a person who is serving a
> sentence for a sexually violent offense (or who was committed after having been
> adjudged not guilty by reason of insanity of a sexually violent offense) and who may
> be a "repeat sexually violent offender."  Within sixty days of the notice, the team
> must (1) determine whether the person is a repeat sexually violent offender and

whether the person is likely to commit another such offense after release; (2) give notice of that determination; and (3) recommend the assessment of the person for a behavioral abnormality.

Within sixty days of the team's recommendation, the TDCJ or the TDMHMR, as appropriate, must engage an expert to determine whether the person suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. If the TDCJ or the TDMHMR concludes that the person suffers from a behavioral abnormality, the department must give notice and corresponding documentation to the state's attorney not later than sixty days after receiving the team's recommendation.

If an SVP candidate is referred to the state's attorney, the attorney may file, in a Montgomery County district court other than a family district court, a petition alleging that the person is a sexually violent predator and stating facts sufficient to support the allegation. The petition must be filed not later than ninety days after the SVP candidate is referred to the state's attorney, and it must be served as soon as practicable after filing.

Within 270 days after the petition is served, the judge must conduct a trial to determine whether the person is an SVP. The alleged SVP has the right to an immediate examination by an expert and to a jury trial. Additionally, the alleged SVP is entitled to appear at the trial, present evidence, cross-examine witnesses, and view and copy all petitions and reports in the court file. At all stages of the proceedings, the alleged SVP is entitled to the assistance of counsel, and indigents are appointed counsel by the court.  A judge or jury then determines whether, beyond a reasonable doubt, the person is an SVP. A jury determination must be unanimous.

If a person is adjudged an SVP, the judge must commit the person for outpatient treatment and supervision, to begin on the date of the SVP's release from a correctional facility or discharge from a state hospital and to continue "until the person's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence." Before entering an order directing an SVP's outpatient civil commitment, the judge must impose on the SVP "requirements necessary to ensure the SVP's compliance with treatment and supervision and to protect the community."  Those constraints include: requiring the SVP to live in a particular location; prohibiting contact between the SVP and victims or potential victims; prohibiting the SVP's use of alcohol, inhalants, or controlled substances; requiring participation in and compliance with a particular course of treatment; requiring the SVP to submit to tracking and refrain from tampering with tracking equipment; prohibiting the SVP from changing residence without prior authorization; and "any other requirements determined necessary by the judge." Violation of one of the commitment requirements is a third-degree felony.

The statute provides for biennial expert examinations and judicial review of the committed person's status. Additionally, if the case manager determines that the SVP's behavioral abnormality has changed to the extent that he or she is no longer likely to engage in a predatory act of sexual violence, the case manager must authorize the SVP to petition for release. Finally, at any time and even absent the case manager's authorization, the SVP has the right to file a petition for release.

*In re Commitment of Fisher*, 164 S.W.3d 637, 640-2 (Tex.) (holding that the SVP statute is civil rather than criminal in nature and that the statute is not void for vagueness) (internal citations omitted), *cert. denied,* 546 U.S. 938 (2005). In passing the SVP Act, Texas became the seventh state to enact legislation providing for the civil commitment of sexually violent predators. *Id.* at 642.

All but Texas have chosen to use inpatient civil commitment, which requires housing the individuals in secure facilities like a prison. By contrast, the Texas Act requires outpatient "commitment," involving intensive treatment and supervision. The Texas Act is also unique in that it imposes criminal penalties for violating the conditions of confinement.

*Id.* (internal citations omitted).

In 2015, the Texas Legislature passed Senate Bill 746 which made significant changes to the SVP Act and "brings Texas's SVP scheme in line with similar programs that the Supreme Court has upheld as constitutional." *Richards v. Taylor*, 2015 WL 5310853 at * 2 (S.D. Tex. Sept. 11, 2015) (citing Act of May 21, 2015, 84th Leg., R.S., ch. 845, 2015 Tex. Sess. Law Serv. 2700 (Senate Bill 746)). The 2015 Amendments repealed the felony penal sanctions for violating conditions imposed by outpatient treatment providers. *Id.* The Amendments also changed the civil commitment program from an outpatient program to a tiered treatment program that "must provide for the seamless transition of a committed person from a total confinement facility to less restrictive housing and supervision and eventually to release from civil commitment, based on a person's behavior and progress in treatment." TEX. HEALTH & SAFETY CODE ANN. § 841.0831. The Amendment also

renamed the "Office of Violent Sex Offender Management" to the "Texas Civil Commitment Office" ("TCCO") and directed trial courts to amend the Orders of Civil Commitment for all SVP's that were civilly committed to conform with the legislative changes after notice and a hearing. Senate Bill 46 at §§ 1, 40.

## C.    Hitt's Civil Commitment

On October 15, 2009, shortly before Hitt was to be released from prison, the State of Texas filed a petition for Hitt's civil commitment as an SVP in accordance with the statute.   At the conclusion of the trial, the jury unanimously found that Hitt "suffers from a behavioral abnormality that predisposes him to engage in a predatory act of sexual violence." *See* Final Judgment in *In re Commitment of Jonathan Irving Hitt*, No. 9-10-09978 (435th Dist. Ct., Montgomery County, Tex. Apr. 1, 2010), Ex. A to Dkt. No. 3.   On April 1, 2010, the trial court rendered a final judgment adjudicating Hitt to be an SVP under § 841.003 and civilly committing him "for outpatient treatment and supervision . . . until the behavioral abnormality . . . is no longer likely to engage in a predatory act of sexual violence and is released from commitment. . . ." *Id*.   The Order of Commitment imposed certain requirements to ensure that Hitt "complies with treatment and supervision and to protect the community," including surrendering himself and reporting to a halfway house facility, not contacting any victims or potential victims, submitting to GPS monitoring, avoiding alcohol and drugs, participating in and complying with the specific course of treatment provided by the Council on Sex Offender Treatment and complying with all written requirements of the Council and case manager, not changing his residence or leaving the state without written authorization from the court, establishing a child safety zone such that he avoids participating in any activity that provides athletic, civil or cultural affairs to persons 17 years of age or younger and not being within 1,000 feet of a

perimeter where children gather, and notifying the case manager regarding a change in job or health status. Ex. B to Dkt. No. 3. The Beaumont Court of Appeals affirmed the trial court's judgment and Hitt's civil commitment. *See In re Commitment of Jonathan Irving Hitt*, 2011 WL 5988024 (Tex. App.– Beaumont, Dec. 1, 2011, pet. denied). Hitt's petition for review was denied on December 14, 2012. After his civil commitment, Hitt was transported to the Travis County Correctional Complex in Del Valle, Texas and then ultimately to a halfway house in Austin, Texas, where he was placed in an outpatient treatment program. In March 2013, Hitt began working at Cobal Food Service, LLC.

On July 2, 2015, the TCCO notified Hitt of the Amendments to the SVP Act and the specific change of the civil commitment program from an outpatient program to a tiered treatment program. Ex. A-10 to Dkt. No. 12. The notification also informed Hitt that he had a right to a hearing in the 435th District Court in Montgomery County or he could choose to waive the hearing and sign the Consent to Tiered Treatment Form and return it to his case manager. The notification informed Hitt that his transition to the new program would begin immediately after the hearing or TCCO's receipt of the signed consent. Hitt chose to waive the hearing and sign the Consent to Tiered Treatment. Ex. A-13 to Dkt. No. 12. Accordingly, on July 3, 2015, the State of Texas filed an agreed motion to transfer Hitt to the tiered program noting that Hitt "will receive increased treatment and supervision in the tiered program which may assist him in resolving his behavioral abnormality such that he becomes no longer likely to engage in predatory acts of sexual violence." Exh. A-2 to Dkt. No. 12. On September 14, 2015, the trial court granted the agreed motion and issued an Amended Order of Civil Commitment. The order required Hitt to reside where instructed by the TCCO, to submit to GPS tracking, to not leave the state without written authorization from TCCO, to participate in and comply with the TCCO sex offender treatment program, and to "comply with all

requirements and rules imposed by the TCCO." Exh. C to Dkt. No. 3. The Order also notified Hitt that failure to comply with the requirements may result in a third degree felony. Hitt was also notified that he had the right to file a petition for release pursuant to § 841.122, a petition for transfer to less restrictive supervision pursuant to § 841.0834 and a petition for review of transfer to more restrictive supervision pursuant to § 841.0834(d). *Id.*

Although Hitt was moved to the tiered treatment program in September 2015, for the remainder of 2015 his residence and job remained the same as it had been prior to the change. This changed in January 2016, when Hitt's case manager noted in her monthly supervision progress report that she had discovered that Hitt was "forming a relationship" with co-worker Maria Lopez and that "[t]here has been physical contact, such as holding hands, kissing, and hugging." Dkt. No. 3 at 40. The case manager further noted that Ms. Lopez had not been approved to be a chaperone through TCCO. *Id.* Hitt had been previously directed to avoid any contact with Ms. Lopez' teenage daughter. *Id.* at 43. On January 25, 2016, Hitt's case manager informed him that he could not have sexual contact with Ms. Lopez without her permission and on January 26, 2016, he was informed to avoid all contact with Ms. Lopez. *Id.* at 44. On February 1, 2016, Hitt alleges that Executive Director of TCCO, Marsha McLane threatened to send him to the Texas Civil Commitment Center for having a secret relationship. *Id.* On February 12, 2016, Hitt was given a polygraph examination to determine whether he had been sexually involved with Ms. Lopez. *Id.* After failing the polygraph examination, Hitt was taken to the Travis County Correctional Complex, pending transport to the Texas Civil Commitment Center ("TCCC") in Littlefield, Texas. On February 15, 2016, Hitt was transported to the TCCC for in-patient sex-offender treatment at Supervision Tier Level 4.

## D.    Instant Lawsuit

On April 5, 2017, proceeding *pro se*, Hitt filed the instant civil rights lawsuit under 42 U.S.C. § 1983 against Defendants Marsha McLane in her official and individual capacity as Executive Director for the TCCO, Brian Thomas in his individual capacity as Facility Director of the TCCC, the TCCC, the TCCO, Correct Care Recovery Solutions ("CCRS") and Travis County Sheriff's Office ("TCSO"). *See* Dkt. No. 3, First Amended Complaint ("FAC").[2] Hitt generally alleges that his constitutional rights have been violated through the "implementation of an inadequate and unconstitutional sex offender treatment program, while in *total confinement*." Dkt. No. 28 at 14. Hitt contends that Defendants have substantially restricted "all of Plaintiff's liberty interests and subject him to punishment under the auspices of the civil commitment statutes" and that he has been deprived of his civil rights without due process of law. *Id*. at p. 6. Hitt also challenges the SVP Act as revised by Senate Bill 746 as unconstitutional as applied.[3] Finally, Hitt alleges that Defendants violated his Texas State Constitutional right to be free from unlawful confinement and that he was provided inadequate sex offender treatment as required by Chapter 841 of the Health & Safety Code. Hitt seeks unspecified compensatory and punitive damages, as well as prospective injunctive and declaratory relief.

Defendants TCCC, CCRS and Brian Thomas have filed a Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6)

---

[2]Hitt has not filed a petition for release,  a petition for transfer to less restrictive supervision, or a petition seeking review of the order transferring him to Tier Level 4, though he has a right to do so under the 2015 amendments to the SVP Act.

[3]Hitt clarified in his Response that he is not alleging that the SVP Act is unconstitutional on its face.  Dkt. No. 28 at 27.

(Dkt. No. 11). Defendant Travis County Sheriff's Office has also filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state a claim upon which relief could be granted (Dkt. No. 25). Defendant Marsha McLane has also filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state a claim upon which relief could be granted (Dkt. No. 12). Hitt has filed responses to all of the Motions to Dismiss and has also filed a Second Motion to Amend his Complaint (Dkt. No. 34) and a Motion for Partial Summary Judgment (Dkt. No. 43).

## II. STANDARDS OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction tests the court's statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Yof*, 241 F.3d 420, 424 (5th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The

Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). When the motion to dismiss raises the defense of qualified immunity, the plaintiff "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm ... alleged and that defeat a qualified immunity defense with equal specificity." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)).

When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should address the jurisdictional attack before addressing any attack on the merits. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) ( "Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter. . . .").

### III. ANALYSIS

Hitt has brought this lawsuit under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. " *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted). Claims under § 1983 may be brought against a governmental entity or against state or local officials in their individual or official

capacity. *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009), *cert. denied,* 558 U.S. 1148 (2010). In *Kentucky v. Graham*, 473 U.S. 159 (1985), the Supreme Court clarified the distinctions between individual and official capacity lawsuits under § 1983:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

> On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "'moving force'" behind the deprivation; thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law [i.e., qualified immunity]. In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment. While not exhaustive, this list illustrates the basic distinction between personal- and official-capacity actions.

*Id.* at 165-167 (emphasis in original and internal citations omitted).

## A.    Defendant Travis County Sheriff's Office's Motion to Dismiss

Hitt alleges that Defendant TCSO unlawfully arrested and imprisoned him in violation of the Fourth Amendment. TCSO moves to dismiss Hitt's claims pursuant to Rules 12(b)(1) and 12(b)(6) because (1) it is a non-jural entity and (2) Hitt has failed to state a claim up on which relief could be granted against TCSO. Hitt did not file a Response to the Motion. However, in his Second Motion

to Amend Complaint, Hitt acknowledges that TCSO is not a proper party and drops TCSO as a Defendant in this case. Because Hitt failed to respond to the Motion and has conceded that TCSO is not a proper party, TCSO's Motion to Dismiss (Dkt. No. 25) should be **GRANTED**.

## B.     Hitt's Second Motion to Amend Complaint

A party may amend its pleading once as a matter of course within 21 days after serving it. FED. R. CIV. P. 15(a)(1)(A). In all other cases a party may amend its pleading only with the opposing party's written consent or the court's leave. FED. R. CIV. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Determining when justice requires permission to amend rests within the discretion of the court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Nilson v. City of Moss Point, Miss.*, 621 F.2d 117, 112 (5th Cir. 1980). The court need not grant leave to amend if the amendment would be futile. *Central Laborer's Pension Fund v. Integrated Elec. Svcs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Analyzing Hitt's motion within this context, it is clear that his amendment would be futile. Hitt's proposed Second Amended Complaint merely reiterates the exact same allegations as his First Amended Complaint, but seeks to add the Travis County Commissioner's Court and Former Sheriff Greg Hamilton as Defendants in the case. This is an attempt by Hitt to remedy his naming of the Travis County Sheriff's Office—an entity incapable of being sued—by replacing it with a proper party. To begin, if Hitt is seeking to sue the entity that operated the Travis County Correctional Complex, the correct defendant to name would either be Travis County itself, or the Travis County Sheriff in her official capacity. Neither the Commissioner's Court nor the former Sheriff are a proper party. Further, the only involvement Travis County had in this case was when Hitt was

ordered to be taken into custody by McLane in January 2016, he was briefly housed in the Travis County Correctional Complex prior to being transported to Littlefield, Texas for inpatient treatment. The proposed amended complaint does not allege any facts as to how this would make Travis County or any of its officials liable for the actions taken by McLane or the TCCO. Instead, the proposed Second Amended Complaint makes only conclusory allegations to support a claim against the County under § 1983. Finally, to the extent he is trying to state a false imprisonment claim against the County, as discussed below, that claim would fail a matter of law. In sum, because any addition of a proper Travis County official would be futile, Hitt's Second Motion to Amend Complaint (Dkt. No. 34) should be **DENIED**.

## C. Defendants TCCC, CCRS and Brian Thomas's Motion to Dismiss

Hitt alleges that Defendants TCCC and Brian Thomas, Facility Director of TCCC, "imposes [sic] and enforces [sic] rules and living conditions that substantially restrict all of Plaintiff's liberty interests and subject him to punishment under the auspices of the civil commitment statutes." FAC at ¶ 24. Hitt further alleges "CCRS and the TCCC deprives [sic] Plaintiff of his civil rights without due process of law, violate his privacy, deny him free speech, deny him the right to associate, and unlawfully confines [sic] him." *Id.* He alleges that "[t]he above actions do not comport with First, Fourth, Fifth or Fourteenth Amendments to the United States Constitution." *Id.* Hitt also alleges that these defendants violated his state constitutional right to be free from unlawful confinement or false imprisonment.

Defendants move to dismiss Hitt's claims under Federal Rule of Civil Procedure 12(b)(6) arguing that he has only made conclusory allegations against them that are insufficient to state a claim for relief under 42 U.S.C. § 1983. The Court agrees.

14

### 1.    Defendants CCRS and TCCC

Defendant CCRS is a private entity which operates TCCC and oversees the sex offender treatment at the facility.  Although private entities are generally not liable under § 1983 since they are not state actors, the Supreme Court has held that "[t]o act 'under color' of law does not require that the accused be an officer of the state." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (internal quotation marks and citation omitted).  Under the Supreme Court's "public function" test, a private entity acts under color of state law "when that entity performs a function which is traditionally the exclusive province of the state." *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989).  The Supreme Court has explained that "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations."  *Evans v. Newton*, 382 U.S. 296, 299 (1966).  Thus, in *Rosborough v. Management & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003), the Fifth Circuit held that "private prison-management corporations and their employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury."  Because CCRS has contracted with the State of Texas to provide medical treatment for the SVP's at TCCC, it qualifies as a state actor under § 1983.  *See Stone v. Gusman*, 2017 WL 3037632 at * 2 (E.D. La. June 21, 2017) ("As an initial matter, the Court notes that Correct Care qualifies as a state actor under § 1983 despite the fact that it is a private entity.").

Although CCRS may be considered a state actor under § 1983, Hitt's claims against it should nevertheless be dismissed because Hitt has failed to allege sufficient facts to show that CCRS or TCCC violated his constitutional rights.  Hitt alleges that CCRS and TCCC violated his First, Fourth, Fifth and Fourteenth Amendment rights, but provides no additional facts to support those

claims. *See* FAC at ¶ 24. Hitt elaborates in his response brief that "two officers in Correct Care Recovery Solution uniforms picked him up form the Travis County Jail, in a prison like van, and transported him to the Texas Civil Commitment Center" which he contends constitutes false imprisonment. Dkt. No. 29 at 3.

Like a governmental entity, a private entity sued under § 1983 cannot be liable for the alleged actions of its employees based on a theory of *respondeat superior*. *Olivas v. CCA*, 215 F. App'x 332, 333 (5th Cir. 2007) ("Contrary to Olivas's argument, CCA may not be held liable on a theory of respondeat superior.") (citing *Monell v. New York Dep't. of Social Serv.*, 436 U.S. 658, 691 (1978)); *Guillory v. Transwood Carriers,* 2013 WL 1759279, at *2 (N.D. Tex. Apr. 24, 2013). ("Although *Monell* stated this rule in the context of municipal government liability, a substantial majority of lower courts—and each circuit to address the issue—have found that *Monell* is equally applicable to private entities that have been sued under § 1983."). A private corporation such as CCRS may only be held liable for a constitutional violation if the violation is the result of official policy or custom on the part of the entity or corporation. *Guillory,* 2013 WL 1759279, at *2. An official policy may be a policy statement, ordinance, regulation, or decision that has been officially adopted and promulgated by a policymaker. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). A policy may also arise from a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* Finally, a policy or custom may be considered to exist where the need to take some action is so obvious, and the inadequacy of existing training so likely to result in the violation of constitutional rights, that a

municipality's failure to train its employees demonstrates a "deliberate indifference" to the rights of citizens. *City of Canton v. Harris*, 489 U.S. 378, 389–90 (1989).

Hitt's First Amended Complaint fails to identify any policy or custom of CCRS or TCCC that was the moving force behind the alleged constitutional violations. In his Response brief, Hitt concedes that he has failed to identify a policy or custom. Dkt. No. 29 at 4 ("The Defendants within their Motion To Dismiss offers that Plaintiff have not alleged a rule, policy, practice, or procedure to substantiate such an allegation that Plaintiff was unlawfully confined/false imprisonment. Plaintiff contends that it was incumbent upon the Defendants to know or ascertain information, as to whether Hitt could be lawfully transported and lawfully placed within the TCCC."). As a result, Hitt has failed to state a claim upon which relief may be granted against CCRS and TCCC.

Moreover, even if Hitt had identified a policy or custom, his § 1983 claim would nevertheless fail because he has failed to allege an underlying constitutional violation. *See West*, 487 U.S. at 48 ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution. . . ."). Hitt's response brief clarifies that his allegations against CRRS and TCCC stem from his claim that he was the victim of "false imprisonment." In order to prevail on a § 1983 false arrest/false imprisonment claim, a plaintiff must show that the defendant "did not have probable cause to arrest him." *Haggerty v. Texas Southern Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Id*. (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)). Hitt's false imprisonment claim fails because the officers who took Hitt into custody had probable cause to arrest him based on the Final Judgment and Order of Commitment

issued by the state court pursuant to the SVA Act. Accordingly, Hitt has failed to allege a § 1983 claim for false imprisonment against CCRS and TCCC.

Hitt's state law claim for false imprisonment also fails. To state a claim for false imprisonment under Texas law, the plaintiff must show (1) willful detention, (2) without consent, and (3) without authority of law. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). Hitt cannot meet the essential elements of a false imprisonment claim because he has failed to show that he was imprisoned without authority of law since he was taken into custody pursuant to a Final Judgment and Order of Commitment issued pursuant to Texas law. *See Bohannan v. Griffin*, 2016 WL 3647625, at *14 (N.D. Tex. June 30, 2016), *aff'd*, 689 F. App'x 377 (5th Cir. 2017) (holding that plaintiff could not show civil commitment was false imprisonment since it was a lawful civil commitment pursuant to a final judgment and order of commitment). Accordingly, Hitt's state law claim against CCRS and TCCC must also be dismissed.

## 2. Defendant Thomas

Like his claims against CCRS and TCCC, Hitt alleges—without any facts to support the claim—that Defendant Thomas "has a policy, practice, and procedure that allows for the unlawful confinement or false imprisonment of a citizen, without authorization from the judiciary or the Texas Legislature." First Amended Complaint at ¶ 65. As explained above, Hitt has failed to allege sufficient facts to show that Defendant Thomas violated his constitutional rights. Hitt's constitutional false imprisonment claim fails because he has not alleged—indeed cannot allege—that he was imprisoned "without authority of law" since he was taken into custody pursuant to the Final Judgment and Order of Commitment. Hitt has failed to allege a viable claim against Thomas and

Thomas should be dismissed from this lawsuit. *See West*, 487 U.S. at 48 ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution . . . .").

**E.     Defendant McLane's Motion to Dismiss**

Hitt brings his § 1983 lawsuit against the Executive Director of the TCCO, Marsha McLane in her official and individual capacities. Specifically, Hitt alleges that McLane violated his (1) Fourth Amendment and state constitutional right to be free from unlawful arrest/ imprisonment; (2) procedural due process rights under the Fourteenth Amendment by removing him from the outpatient treatment program and placing him in total confinement at the TCCC; (3) substantive due process rights by placing him in total confinement and denying him his right to constitutionally adequate sex offender treatment; (4) substantive due process rights by requiring him to pay for GPS monitoring and a portion of his housing and treatment costs; (5) First Amendment right to associate and to engage in a consensual relationship with a person of his choosing; (6) Fifth Amendment right against self-incrimination by confining him at the TCCC after forcing him to take a polygraph examination; and (7) Fourth Amendment right to be free from illegal searches of his property. Hitt also argues that the 2015 Amendments to the SVP Act are unconstitutional.[4]

Although Defendant McLane entitled her Motion to Dismiss as a "Partial Motion to Dismiss," she contends that she is moving to dismiss all of Hitt's claims in this lawsuit. *See* Dkt. No. 39 at 1-3. McLane argues that Hitt's lawsuit should be dismissed for lack of standing, lack of

---

[4]Although Hitt's First Amended Complaint alleges that he was denied his right to vote and right to access to the courts, Hitt fails to address these claims in his Response. Accordingly, Hitt has abandoned such claims. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (claim abandoned when not defended in response to motion to dismiss).

subject matter jurisdiction, Eleventh Amendment immunity, failure to state a claim upon which relief can be granted and qualified immunity.

### 1. McLane's Jurisdictional Arguments

#### a. Standing

McLane argues that this lawsuit should be dismissed because Hitt has failed to show that he has standing to bring this lawsuit. McLane seems to argue that because Hitt is no longer an *outpatient* in the tiered treatment program, he lacks standing to bring any of his constitutional claims in this case. This is erroneous. Article III provides that the judicial power of the federal courts extends only to "Cases" and "Controversies," U.S. Const. art. III, § 2, and standing is an "essential and unchanging part of [this] requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a claimant must present (1) an actual or imminent injury that is concrete and particularized, (2) fairly traceable to the defendant's conduct, and (3) redressable by a judgment in the plaintiffs favor. *Id.* at 560-61. Hitt has clearly met this standard. The fact that Hitt is no longer considered an outpatient does not mean that he has no standing to allege a violation of a constitutional right. McLane's standing argument is entirely baseless.

#### b. Eleventh Amendment[5]

McLane next argues that Hitt's claims for monetary damages against her in her official capacity as the Executive Director of TCCO are barred by the Eleventh Amendment. The Court agrees. The Eleventh Amendment provides:

---

[5]This section only addresses Hitt's claims against McLane in her official capacity. The Eleventh Amendment does not apply to Hitt's claims against her in her *individual capacity* because "the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Hafer*, 502 U.S. at 30-31. However, McLane may be protected from these claims under the doctrine of qualified immunity, discussed below.

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. Amend. XI. The Eleventh Amendment "confirm[s] the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant." *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Supreme Court has consistently held that "States have retained their traditional immunity from suit, 'except as altered by the plan of the Convention or certain constitutional amendments.'" *Id.* (quoting *Alden v. Maine*, 527 U.S. 706, 713 (1999)). A State may waive its Eleventh Amendment immunity, and in some circumstances Congress may abrogate it by appropriate legislation. *Id.* at 253-4. "But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 254. *See also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

As noted earlier, when a state officer is sued in their official capacity, the "suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 165. The TCCO is a state agency. TEX. HEALTH & SAFETY CODE § 841.007; *King v. 435th Dist. Court*, 2017 WL 3687351, at *2 (E.D. Tex. Aug. 4, 2017). Thus, the suit against McClane in her official capacity is a suit against the TCCO, an agency of the State of Texas. It is therefore barred by the Eleventh Amendment. *Pennhurst*, 465 U.S. at 101 ("The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'") (quoting *Ford Motor Co. v. Dep't*

*of Treasury*, 323 U.S. 459, 464 (1945)).  Accordingly, Hitt's § 1983 claims for damages against McLane in her official capacity are barred.

The case is different with regard to Hitt's claims against McLane in her official capacity for prospective injunctive relief.  *See Ex parte Young*, 209 U.S. 123, 149 (1908).  The *Ex Parte Young* exception "strips the individual state actor of immunity and allows a private citizen to sue that individual in federal court for prospective injunctive relief based on allegations that the actor violated federal law."  *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir.), *cert. denied*, 565 U.S. 1079 (2011).  Accordingly, Hitt's federal constitutional claims against McLane seeking prospective injunctive relief are not barred by the Eleventh Amendment.[6]

### c.    *Rooker-Feldman* Doctrine

McLane argues that the *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction over Hitt's claims because he is attempting to collaterally attack the state court's civil commitment judgment.  She argues that "Hitt's claims are 'inextricably intertwined' with [the commitment order], in that they are essentially challenges to the court's orders regarding the validity of the conditions of supervision imposed by the state court judge as mandated by Texas law."  Dkt. No. 12 at p. 17.

---

[6]"[S]ince state law claims do not implicate federal rights or federal supremacy concerns, the *Young* exception does not apply to *state* law claims brought against the state." *McKinley*, 643 F.3d at 406.  Accordingly, Hitt's state law claims against Defendant McLane in her official capacity are barred regardless of the relief he is seeking. *See Richards v. Office of Violent Sex Offender Mgmt.*, 2015 WL 1470355, *2 (S.D. Tex. March 31, 2015).  Thus, Hitt's state constitutional claims and claims under Chapter 841 of the Texas Health & Safety Code against McLane are barred.  *See Id.* (dismissing § 841.007 claim for lack of subject matter jurisdiction).

"[T]he *Rooker-Feldman*[7] doctrine dictates that federal district courts lack subject matter jurisdiction over lawsuits that effectively seek to 'overturn' a state court ruling." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). Under the doctrine, federal courts may not hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, at 284. In order to determine if the doctrine applies, courts look to the source of the plaintiff's alleged injury and what the federal court is being asked to review and reject. *Brown v. Taylor*, 677 F. App'x 924, 927 (2017). "Review is barred if a claim 'asserts as a legal wrong an allegedly erroneous decision by a state court' and requires the court to review and reject the state court's decision." *Id.* (quoting *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 381 (5th Cir. 2013)). Claims "inextricably intertwined" with a state court judgment may also be barred, but only when they "invite a federal district court to 'sit in direct review of state court decisions' by asserting constitutional claims that the state court had not directly addressed." *Id.* at 384-85 (quoting *Exxon Mobil*, 544 U.S. at 286 n.1).

The *Rooker-Feldman* doctrine has little or no applicability to this case. While Hitt cannot challenge the state court's Order of Commitment and Amended Order of Commitment, that does not mean he may not challenge the implementation or the details of his treatment program. So while Hitt cannot challenge the commitment orders, the Court does not read his suit as attempting to do so.[8]

---

[7]The doctrine gets its name from two Supreme Court decisions: *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[8]Hitt's Order of Commitment specifically ordered that "Hitt is required to submit to tracking under a global positioning satellite (GPS) monitor or other monitoring system provided." Exh. B to Dkt. No. 3. *See also*, Amended Order of Civil Commitment ("Hitt is required to submit to tracking under a particular type of tracking service and to any appropriate supervision"). Exh. C to Dkt. No.

Instead, he challenges the conditions of confinement imposed by McLane, and the process used to impose those. "*Rooker-Feldman* does not prevent review of such discretionary executive action taken in enforcing state court judgments." *Brown,* 677 F. App'x at 927. Because the Court is not being called upon to review the state court's commitment orders the *Rooker-Feldman* doctrine does not bar Hitt's claims. *Id.* (*Rooker-Feldman* civilly committed plaintiff's lawsuit challenging conditions of confinement); *Richards,* 2015 WL 1470355 at * 3 (plaintiff's claims challenging the implementation and enforcement of civil commitment order not barred by *Rooker-Feldman*).

### d. *Heck v. Humphrey*

McLane also argues that Hitt's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a district court must generally dismiss a prisoner's complaint brought pursuant to 42 U.S.C. § 1983, if success in the civil rights action would necessarily imply the invalidity of the plaintiff's conviction or sentence. *Id.* at 2372. The *Heck* doctrine is inapplicable, however, when a § 1983 action does not implicate the validity of a conviction or the duration of confinement. *Muhammad v. Close*, 540 U.S. 749, 751–52, 754–55 (2004). Thus, even assuming that *Heck* applies in this case, the *Heck* rule does not bar Hitt's lawsuit because success on the merits of his claims would not invalidate his civil commitment. *See Richards*, 2015 WL 1470355 at *3 n.17 ("Assuming, arguendo, that *Heck* applies to Plaintiff's civil commitment, the *Heck* rule does not bar Plaintiff's claim for essentially the same reasons that the

---

3. Thus, any challenge to the state court's specific order that he be subject to GPS monitoring would be barred under the *Rooker-Feldman* doctrine. However, Hitt may challenge the fact that McLane violated his rights by imposing the costs of GPS tracking on him. See *Brown*, 677 F. App'x at 928 (holding that challenge to imposing costs of GPS monitoring on plaintiff was not barred by *Rooker-Feldman* since commitment order did not mention the costs of GPS tracking).

*Rooker–Feldman* doctrine is inapplicable: success on the merits of Plaintiff's claim would not necessarily invalidate his civil commitment.").

### 2.   **McLane's Non-Jurisdictional Arguments**

Hitt alleges seven constitutional claims against McLane, asserting that she violated his:

(1)   Fourth Amendment and state constitutional right to be free from unlawful arrest and imprisonment;

(2)   Procedural Due Process rights under the Fourteenth Amendment by removing him from the outpatient treatment program and sending him to the TCCC;

(3)   Substantive Due Process rights by removing him from outpatient treatment and placing him in total confinement;

(4)   Substantive Due Process rights by requiring him to pay for GPS monitoring and a portion of his housing and treatment;

(5)   First Amendment right to associate and to engage in a consensual relationship with a person of his choosing;

(6)   Fifth Amendment right against self-incrimination by confining him at the TCCC after forcing him to take a polygraph examination; and

(7)   Fourth Amendment right to be free from illegal searches of his property.

Hitt also alleges that newly enacted amendments to Chapter 841 are unconstitutional as applied to him.  Hitt brings these claims against McLane in her official and individual capacities. As already noted, the only claim Hitt may make against McLane in her official capacity must be one for prospective injunctive relief.  And to state a claim against McLane in her individual capacity, Hitt must show that while acting under color of state law, McClane caused the deprivation of his constitutional rights, and she is not entitled to qualified immunity.  Regardless of whether Hitt is alleging a claim against McLane in her individual or official capacity, he must "allege the violation of a right secured by the Constitution."  *West*, 487 U.S. at 48.

### a.    False Imprisonment

As discussed above with regard to Defendants TCCO, CCRS and Brian Thomas, Hitt has failed to allege a viable false imprisonment claim under state or federal law because he cannot show he was imprisoned "without authority of law" since he was taken into custody consistent with a judgment and commitment order adopted pursuant to Texas law.  Accordingly, Hitt's unlawful arrest/imprisonment claim against McLane must be dismissed.

### b.    Procedural Due Process

Hitt argues that McLane denied him his procedural due process rights under the Fourteenth Amendment by removing him from the outpatient treatment program and placing him in total confinement at the TCCC.  McClane contends Hitt fails to plead facts showing a plausible violation of his procedural due process rights.  Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.  *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976).  The touchstone of procedural due process is "the requirement that 'a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it," because "[t]he right to be heard before being condemned to suffer grievous loss of any kind . . . is a principle basic to our society."  *Id.* at 348, 333 (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (1951) (Frankfurter, J., concurring).  To comport with due process, the notice must reasonably convey the required information, and "must be granted at a meaningful time and in a meaningful manner."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)) (quotation marks omitted).

Hitt has failed to plead any facts which would establish that the procedures utilized in this case before he was sent to TCCC were constitutionally insufficient. First, Hitt waived any objection or right to process with regard to the amendment of his order of commitment, subjecting him to the new supervision scheme. On July 2, 2015, the TCCO notified Hitt of the Amendments to the SVP Act and the specific change of the civil commitment program from an outpatient program to a tiered treatment program, which included inpatient, or confined, treatment. Ex. A-10 to Dkt. No. 12. The notification also informed Hitt that he had a right to a hearing in the 435th District Court in Montgomery County or he could choose to waive the hearing and sign the Consent to Tiered Treatment Form and return it to his case manager. The notification informed Hitt that his transition to the new program would begin immediately after the hearing or TCCO's receipt of the signed consent. Hitt chose to waive the hearing and sign the Consent to Tiered Treatment. Ex. A-13 to Dkt. No. 12. Accordingly, on July 3, 2015, the State of Texas filed an agreed motion to transfer Hitt to the tiered program. Exh. A-2 to Dkt. No. 12. On September 14, 2015, the trial court granted the agreed motion and issued an Amended Order of Civil Commitment making him subject to the tiered system created by the amendments to the commitment statutes. Thus, the move of Hitt from the old to the new commitment programs plainly comported with due process.

The notice also informed Hitt that under the new program, "TCCO will have the authority to promote or demote clients within the tiers, including a move to a private residence, without court approval; however, clients are permitted to petition the court to review the decision." *Id.* at Ex. A-10. As noted, the statute grants a committed offender the right to file a petition for release (§ 841.122), a petition for transfer to less restrictive supervision pursuant (§ 841.0834), and a petition for review of transfer to more restrictive supervision (§ 841.0834(d)). To date, Hitt has not

filed any petition under the statute, including a petition challenging the transfer to tier four, which led to his confinement at TCCC. This failure to take advantage of the remedies available to him under the statute is fatal to his procedural due process claim. Under Fifth Circuit precedent, a party complaining of a lack of due process is required to utilize available state court remedies before proceeding to court under § 1983. *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 519 (5th Cir. 1998) (plaintiff cannot complain that "her due process rights were violated when she skipped an available state remedy").[9] Because Hitt has the right to seek review of the transfer leading to his confinement at TCCC, or to seek release, his due process claim is meritless as a matter of law.[10]

### c.    Constitutionality of 2015 Amendments and Right to Outpatient Treatment

Hitt argues that the 2015 Amendments to Chapter 841 of the SVP Act are unconstitutional as applied to him.[11] He complains of the amendments' retroactivity, and also argues placing him in total confinement is punitive and therefore unconstitutional because he has "a vested liberty interest

---

[9]*See also*, *Browning v. City of Odessa*, 990 F.2d 842, 845 n.7 (5th Cir. 1993) (the court "has consistently held that one who fails to take advantage of procedural safeguards available to him cannot later claim that he was denied due process"); *Rathjen v. Litchfield*, 878 F.2d 836, 839–40 (5th Cir. 1989) ("no denial of procedural due process occurs when a person has failed to utilize the state procedures available to him"); *Galloway v. Louisiana*, 817 F.2d 1154, 1158 (5th Cir. 1987) ("[a]n employee cannot ignore the process duly extended to him and later complain that he was not accorded due process" and thus finding no procedural due process violation).

[10]Hitt has recently filed a Motion for Partial Summary Judgment on his Procedural Due Process Claim (Dkt. No. 43). For the reasons stated in the text, that motion is without merit. It will also be moot if this Report and Recommendation is adopted by the district court.

[11]Hitt is only challenging the 2015 Amendments to the SVP Act and is not challenging the constitutionality of the underlying SVP Act as he concedes that such a challenge would fail in light of the Texas Supreme Court's opinion in *In re Commitment of Fisher,* 164 S.W.3d 637(Tex.) (upholding the SVP Act), *cert. denied*, 546 U.S. 938 (2005). See Dkt. No. 28 at p. 27.

in outpatient treatment." Dkt. No. 28 at p. 30.[12] The Supreme Court has repeatedly upheld civil commitment programs similar to Texas's. *See United States v. Comstock*, 560 U.S. 126 (2010); *Kansas v. Crane*, 534 U.S. 407 (2002); *Seling v. Young*, 531 U.S. 250 (2001); *Kansas v. Hendricks*, 521 U.S. 346 (1997). In *Kansas v. Hendricks*, the Supreme Court upheld the constitutionality of a Kansas statute providing for the inpatient civil commitment of sexually violent predators. The Court rejected the petitioner's argument that total confinement constituted punishment, reasoning:

> Although the civil commitment scheme at issue here does involve an affirmative restraint, the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment. The State may take measures to restrict the freedom of the dangerously mentally ill. This is a legitimate nonpunitive governmental objective and has been historically so regarded. The Court has, in fact, cited the confinement of "mentally unstable individuals who present a danger to the public" as one classic example of nonpunitive detention. If detention for the purpose of protecting the community from harm necessarily constituted punishment, then all involuntary civil commitments would have to be considered punishment. But we have never so held.

> * * *

> Where the State has "disavowed any punitive intent"; limited confinement to a small segment of particularly dangerous individuals; provided strict procedural safeguards; directed that confined persons be segregated from the general prison population and afforded the same status as others who have been civilly committed; recommended treatment if such is possible; and permitted immediate release upon a showing that the individual is no longer dangerous or mentally impaired, we cannot say that it acted with punitive intent. We therefore hold that the Act does not establish criminal proceedings and that involuntary confinement pursuant to the Act is not punitive.

521 U.S. at 363, 368-9 (internal citations and quotations omitted). Accordingly, the Court held that the Kansas SVP Act "comports with due process requirements and neither runs afoul of double

---

[12]Although Hitt also argues generally that he has been denied adequate sex offender treatment in violation of his constitutional rights and the SVP Act, Hitt's pleadings focus only on the inadequacy of the treatment program based on the elimination of outpatient treatment. Hitt has failed to allege how the treatment program is inadequate other than complaining that it is insufficient because it eliminates outpatient treatment and requires total confinement.

jeopardy principles nor constitutes an exercise in impermissible *ex post facto* lawmaking." *Id.* at 371.

Texas state courts have also consistently upheld the constitutionality of the Texas SVP Act as originally enacted. *See, e.g., Fisher*, 164 S.W.3d at 645-656 (holding that SVP statute was not punitive and was not void for vagueness); *Beasley v. Molett*, 95 S.W.3d 590, 607–08 (Tex. App.–Beaumont 2002, pet. ref'd) (rejecting SVP's argument that the SVP Act was unconstitutional on its face and in its application). Courts have also upheld the constitutionality of the 2015 Amendments and have rejected constitutional challenges to the tiered treatment program. *See In re Commitment of Garza*, 2016 WL 4485641, *1 (Tex. App.–Beaumont Aug. 25, 2016, ) ("[W]e reiterate that Chapter 841 of the Texas Health and Safety Code, as amended in 2015, is neither punitive nor facially unconstitutional"); *In re Commitment of May*, 500 S.W.3d 515, 520-27 (Tex. App. 2016, pet. denied) (upholding the constitutionality of the 2015 Amendments to Chapter 841, finding that the tiered treatment program was not unconstitutionally punitive, retroactive or a violation of due process).

In fact, the 2015 Amendments to the SVP Act, which deleted all references to outpatient treatment, brought "Texas's SVP scheme in line with similar programs that the Supreme Court has upheld as constitutional." *Richards v. Taylor*, 2015 WL 5310853, *2 (S.D. Tex. Sept. 11, 2015). In *Richards*, the plaintiff, like Hitt in this case, argued that the 2015 Amendments to the SVP Act were retroactive amendments and that he had an ongoing "vested right to outpatient treatment." *Id.* at *3. The district court rejected this argument noting that the plaintiff "cites no authority for the proposition that his Order of Civil Commitment, by requiring that Plaintiff be committed for outpatient treatment, thereby confers upon him a vested or unalterable right to outpatient treatment." *Id.* Rather, the requirement for outpatient treatment under the former law was a condition of his

commitment order and not an "entitlement." *Id.* The court further reasoned that the 2015 Amendments did not impermissibly increase plaintiffs' liability for past conduct since "Plaintiff's commitment to outpatient treatment was not a punishment for past conduct but rather a civil commitment based on a finding that Plaintiff's behavioral abnormality made him 'likely to engage in repeated predatory acts of sexual violence.'" *Id.* (quoting Tex. Health & Safety Code § 841.001). Accordingly, the court found that the Legislature was not precluded from "changing the modalities for effective treatment of sexually violent predators" and concluded that the plaintiff had "not shown any statutory or constitutional basis for finding that he has an unalterable right for outpatient treatment by reason of the prior legislative treatment scheme such that he has a continuing right to injunctive relief after enactment of the reforms of the 2015 Amendment." *Id.* at 5.

Texas courts have similarly held that SVP's do not have a statutory or constitutional right to continued outpatient treatment. In *May*, the court rejected the SVP's arguments that the SVP Act, as amended, was unconstitutionally punitive, retroactive, or that the plaintiff had a vested right to outpatient treatment. 500 S.W.3d at 523-526. In rejecting the plaintiff's argument that he had a right to outpatient care, the court reasoned:

> May lost his right to control the location of his residence when he was committed. May argues the use of an outpatient modality under the previous version of the statute demonstrates that inpatient sex offender treatment is unnecessary, "[b]ut the necessity and appropriateness of legislation are generally not matters the judiciary is able to assess." Changes in the law that merely affect remedies or procedure, or that otherwise have little impact on prior rights, are usually not unconstitutionally retroactive. When May was civilly committed in 2013, the Legislature provided that settled expectations included having the treating agency determine where May would reside and the sex offender treatment he would receive. The State's need to operate a sex offender treatment program for sexually violent offenders who have discharged their criminal sentences justifies requiring a person to receive sex offender treatment at the general location where he resides, as determined by the TCCO, which by statute now includes a tiered program with "inpatient" as opposed to "outpatient"

treatment. We conclude that Chapter 841, as amended in 2015, does not violate the constitutional prohibition against retroactive laws.

*Id.* at 526 (internal citations omitted).

The petitioner in *In re Wilson* similarly argued that his amended commitment order unlawfully interfered with his rights under the original commitment order to receive outpatient treatment. *In re Wilson*, 2016 WL 5225422, at *3 (Tex. App.– Beaumont July 15, 2016, no pet. h.). The court rejected this argument, finding that the trial court had the authority to modify its prior orders and the plaintiff "had no vested rights under the trial court's previous orders." *Id.* The court also noted that the judgment allowed the agency in charge of the plaintiff's treatment to decide both where he would be required to live and to supervise the program of sex offender treatment that the commitment order required that he receive. *Id.* The court also pointed out that the plaintiff, like Hitt, has a statutory remedy regarding his complaint that the housing that TCCO has placed him in is too restrictive given his condition, as the SVP statute allows SVP's to petition the trial court to obtain less restrictive housing if decreasing his restrictions would be in the SVP's best interest, and if adequate protection for the community can be imposed. *Id.* (citing § 841.0834 (a)-(b)). "[B]y amending the commitment order so that the amended order complied with the changes the Legislature made to the SVP statute in 2015, the trial court did not violate [plaintiff's] constitutional rights." *Id.; see also, In re Danner,* 502 S.W.3d 838, 839 (Tex. App.- Beaumont Sept. 22, 2016, no pet. h.). Based on the foregoing, Hitt's claim that the SVP Act, as amended, is unconstitutional as applied to him is without merit as a matter of law.

**d.      Costs for GPS Monitoring, Housing and Treatment**

Hitt argues that requiring him to pay for the costs of GPS monitoring and a portion of his housing and treatment amounts to punishment and violates his substantive due process rights.  As discussed above, "[a]n examination of pertinent authority and the SVP statute confirms that the proceeding at the heart of this action is civil in nature and that [Hitt] is not, contrary to his assertions, incarcerated, nor is he being subjected to punitive treatment."  *Day v. Seiler*, 560 F. App'x 316, 319 (5th Cir. 2014).  Accordingly, Hitt's substantive due process claims with regard to the costs for the GPS monitoring, housing and treatment must be dismissed.  *See id.* ("the court did not err by rejecting Day's claims concerning the probable-cause hearing and GPS monitoring, both of which are grounded in his theory that the SVP proceedings are punitive and thus not civil in nature.").

**e.      First Amendment Right to Associate**

Hitt alleges that McLane violated his First Amendment right to associate with another consenting adult when she prohibited him from associating with his co-worker Maria Lopez.  In the context of prisoner's First Amendment rights, the Supreme Court has established that policies infringing on First Amendment rights are valid if "reasonably related to legitimate penological interests."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).  The Fifth Circuit has determined with regard to civilly committed individuals, "restrictions are permissible so long as they advance the state's interest in security, order, and rehabilitation."  *Bohannan v. Doe*, 527 F. App'x 283, 295 (5th Cir. 2013).  Therefore, restrictions on the right to association are evaluated under the same standard as restrictions on mail—do they bear "a rational relation" to the state's interests in security, order and rehabilitation sufficient to sustain the regulation in question.  *Id.* (quoting *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003)).

In *Bohannan,* the civilly committed plaintiff alleged that the TCCO's predecessor's blanket policies concerning visitations and outside contact violated right of association because (1) officials enforced a general prohibition on outside contact, (2) unjustifiably delayed consideration of requests for exceptions to the rule, and (3) had no means of protecting against retaliatory denial of exceptions to the no-contact rule. 527 F. App'x at 295. The Fifth Circuit reversed the District Court's dismissal of the claim finding that plaintiff had alleged a plausible First Amendment claim against the defendant:

> Bohannan has alleged that the CSOT has blanket policies that prohibit all outside contact subject to arbitrary exceptions that must be requested and approved on a case-by-case basis. Bohannan further claims that decisions to permit or deny outside contact are unduly delayed and used as tools of retaliation. In the context of an individual civilly committed for the purpose of supervision and outpatient treatment, it is hard to imagine how such a broad prohibition or an alleged policy of retaliatory denials is reasonably related to the institution's goal of treatment and rehabilitation.

*Id.* See also, *Day*, 560 F. App'x at 319-20 (reversing district court and finding that plaintiff alleged a plausible First Amendment right of association claim where he alleged that Office of Violent Sexual Offender Management, now TCCO, policies served as a complete ban on unapproved contact with family members and friends). Based on this law, the Court finds that Hitt has alleged a plausible First Amendment claim against McLane to withstand a Motion to Dismiss under Rule 12(b)(6). Because McLane failed to sufficiently address the merits of Hitt's First Amendment claim in the Motion to Dismiss, the Court is unable to make any determination at this time whether McLane might be entitled to qualified immunity on this claim. Accordingly, the motion to dismiss should be **DENIED** with regard to this claim.

### f.    Fifth Amendment Right against Self-Incrimination

Hitt alleges that McLane violated his Fifth Amendment right against self-incrimination by requiring him to answer incriminating questions on a polygraph examination. "The Fifth Amendment, in relevant part, provides that no person shall be compelled in any criminal case to be a witness against himself." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (internal quotation marks omitted). This prohibition "privileges [Hitt] not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Id.* As the Fifth Circuit has explained:

> [T]he Fifth Amendment privilege is not self-executing: individuals generally must claim the privilege against self-incrimination in order to subsequently seek redress. If an individual asserts the privilege and is forced to answer regardless, the answer is deemed compelled. That said, the privilege need not be asserted where some identifiable factor essentially denies an individual the choice of refusing to answer. In these situations, the answers are also deemed compelled. One such circumstance arises when assertion of the Fifth Amendment privilege is itself penalized. Thus, in order to assert a plausible Fifth Amendment claim, [a plaintiff] must allege (1) that his statements were compelled either because he raised his Fifth Amendment privilege and was denied it, or because he could not have raised his privilege without facing a penalty; and (2) that his statements were used in a subsequent prosecution.

*Bohannan,* 527 F. App'x at 295-96 (internal citations omitted).

In *Bohannan,* the civilly committed plaintiff alleged that mandatory polygraph examinations violated his right against self-incrimination because he could not decline and because such statements were used against him in a subsequent criminal prosecution. *Id.* at 296. The Fifth Circuit reversed the district court's dismissal of the claim because the polygraph examinations presented the plaintiff with the following dilemma: "either refuse to answer questions regarding violations of the commitment order and be prosecuted for the refusal, or acknowledge violating the commitment order and be charged accordingly." *Id.* Accordingly, the Fifth Circuit found that the plaintiff had alleged

a plausible Fifth Amendment claim. *Id.*; *see also, Day*, 560 F. App'x at 320 (holding that claim alleging that SVP was required to undergo polygraph examinations or else be dismissed from therapy, which was a felony, alleged a Fifth Amendment claim against self incrimination).

Hitt's claim in this suit is substantially similar to these cases since he alleges that he was forced to undergo polygraph examinations and that he could not refuse to do without being punished by being placed in total confinement. The Court finds that Hitt has alleged enough facts at this juncture to state a plausible claim for relief under the Fifth Amendment to withstand the motion to dismiss. Again, McLane failed to address the merits of this claim, so the Court is likewise unable to determine at this time whether McLane has qualified immunity. Accordingly, McLane's Motion to Dismiss this claim should be **DENIED**.

### g. Fourth Amendment Claim

Hitt alleges McLane violated his Fourth Amendment right to be free from unreasonable searches and seizures of his home while he was in the outpatient component of the tiered program. McLane has failed to respond to the merits of this argument. Because McLane failed to sufficiently address the merits of Hitt's Fourth Amendment claim, the Court cannot determine whether McLane might have qualified immunity with regard to this claim as well, and the motion to dismiss this claim should be **DENIED.**

### IV. CONCLUSION

Based upon the foregoing, the Court recommends the motions to dismiss filed by the TCSO, and the TCCC, CCRS, and Brian Thomas be granted in full, and that McLane's Motion to Dismiss be granted in part and denied in part. As stated above, all of Hitt's claims against McLane should be dismissed in this case except: (1) Hitt's First Amendment right of association claim, (2) Hitt's

Fifth Amendment right against self-incrimination claim based on the mandatory polygraph examination, and (3) Hitt's Fourth Amendment unreasonable search and seizure claim. All of the remaining claims should be dismissed as failing to state a claim on which relief may be granted.

## V. RECOMMENDATION

In light of the foregoing, the undersigned **RECOMMENDS** that the District Judge:

- **DENY** Plaintiff's Second Motion to Amend Complaint (Dkt. No. 34);

- **GRANT** Defendant Travis County Sheriff's Office's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure Rules 12(b)(1) and 12(b)(6) (Dkt. No. 25) in its entirety and **DISMISS** Travis County Sheriff's Office from this lawsuit;

- **GRANT** Texas Civil Commitment Center, Correct Care Recovery Solutions, LLC and Brian Thomas' Motion to Dismiss under Federal Rule 12(b)(6) (Dkt. No. 11) in its entirety and **DISMISS** these defendants from this lawsuit;

- **GRANT IN PART AND DENY IN PART** Defendant Marsha McLane's Partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Dkt. No. 12), and **GRANT** the motion with regard to all of Hitt's claims **EXCEPT** (1) Hitt's First Amendment right to associate claim, (2) Hitt's Fifth Amendment right against self-incrimination claim based on the mandatory polygraph examination, and (3) Hitt's Fourth Amendment unreasonable search and seizure claim.

- **DENY** Plaintiff's Motion for Partial Summary Judgment on his Procedural Due Process Claim (Dkt. No. 43).

## VI. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report

shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 7th day of February, 2018.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE