IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JONATHAN HITT,
        Plaintiff,
-vs-

CAUSE NO.:
AU-17-CA-00289-SS

MARSHA MCLANE, in her official and
individual capacities as Executive Director
of the Texas Civil Commitment Office;
BRIAN THOMAS, in his individual and
official capacities as Facility Director of the
Texas Civil Commitment Center; TRAVIS
COUNTY SHERIFF'S OFFICE; TEXAS
CIVIL COMMITMENT CENTER;[1] and
CORRECT CARE RECOVERY
SOLUTIONS, LLC,
        Defendants.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically, Plaintiff Jonathan Hitt's Motion to Amend [#63] and Defendant Marsha McLane's Response [#75] in opposition; Hitt's Motion for Partial Summary Judgment [#64], Defendants Brian Thomas and Correct Care Recovery Solutions (CCRS)'s Response [#73] in opposition, and McLane's Response [#74-2] in opposition; Thomas and CCRS's Motion for Summary Judgment [#66]; Thomas and CCRS's Motion to Supplement Motion for Summary Judgement [#67] and Hitt's Response [#72] in opposition;[2] and McLane's Motion for Summary

---

[1] Thomas and CCRS have informed the Court that Texas Civil Commitment Center (TCCC) is not a legal entity but rather a physical facility run by CCRS. CCRS Mot. Summ. J. [#67] at 4. As TCCC is not a legal entity capable of being sued, it is DISMISSED from this action and should be removed from the case caption.

[2] The Court GRANTS Thomas and CCRS's Motion to Supplement [#67].

1

Judgment [#65-1] and Hitt's Response [#87] in opposition.[3] Having reviewed the documents, the relevant law, and the case file as a whole, the Court now enters the following opinion and orders.

## Background

In July 1999, Hitt was convicted on eight counts of indecency with a child and sentenced to ten years in prison. R. & R. [#45] at 2. In 2009, shortly before Hitt was to be released from prison, the State of Texas filed a petition to civilly commit Hitt under the Civil Commitment of Sexually Violent Predators Act (SVP Act). *Id.* at 6. At the conclusion of the trial, the jury unanimously found Hitt suffers from a behavioral abnormality predisposing him to engage in predatory acts of sexual violence. *Id.* The trial court rendered a final judgment adjudicating Hitt to be a sexually violent predator (SVP) under the statute and issued an order of civil commitment mandating Hitt undergo outpatient treatment and supervision until his behavioral abnormality is no longer likely to cause him to engage in predatory acts of sexual violence. *Id.* Hitt underwent outpatient treatment from 2010 to 2015. *Id.* at 6–7.

In 2015, Texas amended the SVP Act. *Id.* Whereas the SVP Act previously provided exclusively for outpatient treatment, the 2015 amendments instated a tiered treatment program providing for both inpatient and outpatient treatment. *Id.* The Texas Civil Commitment Office (TCCO) notified Hitt of the amendments to the SVP Act and informed him he had a right to a hearing regarding the changes to the program. *Id.* Hitt waived his right to a hearing and consented to enter the new, tiered treatment program. *Id.* Accordingly, Hitt's order of civil commitment was amended to reflect the changes implemented by the 2015 amendments to the SVP Act. *Id.* Of particular importance here, the amended order provides the TCCO with authority to require Hitt to reside at the TCCO in order to undergo inpatient treatment. McLane

---

[3] Additionally, the Court GRANTS McLane's Motions to Seal [#65, #74] but cautions that competent attorneys should be capable of drafting pleadings and motions which do not require such sealing.

2

Mot. Summ. J. [#65-2] Ex. A (Am. Order Civil Commitment) at 2–3 (mandating Hitt "reside where instructed by the TCCO"). Hitt was notified that, should he be transferred to inpatient treatment, he possessed a right to file a petition for release or a petition for transfer to less restrictive supervision. *Id.*

In January 2016, Hitt's case manager discovered Hitt had been "forming a relationship with coworker Maria Lopez" which included intimate physical contact. *Id.* at 8. Hitt's case manager instructed him to avoid all contact with Lopez. *Id.* Hitt alleges that on February 1, 2016, TCCO Executive Director Marsha McLane threatened to transfer Hitt into inpatient treatment at the Texas Civil Commitment Center (TCCC) for having a secret relationship. *Id.* On February 12, Hitt was given a polygraph examination to determine whether he had been sexually involved with Lopez. *Id.* Hitt failed the polygraph and was immediately taken into custody by employees of CCRS. *Id.* He was then taken to Travis County Correctional Complex pending transport to the TCCC on February 15, 2016. *Id.* Hitt alleges he never received a due process hearing regarding his confinement at the TCCC. Am. Compl. [#3] at 12–14, 43–45; Obj. [#50] at 6; *see also* McLane Mot. Dismiss [#12] at 2 (making no mention of any due process hearing following Hitt's confinement at the TCCC).

On April 5, 2017, Hitt filed the instant civil rights lawsuit under 42 U.S.C. § 1983, alleging violations of the First, Fourth, Fifth, and Fourteenth Amendments. Compl. [#1]. Hitt also brings state law claims for false imprisonment. Am. Compl. [#3]. On March 11, 2018, the Court granted in part and denied in part defendants' motions to dismiss Hitt's claims. Order of March 11, 2018 [#52]. Hitt's remaining claims are as follows: (1) a Fourth Amendment claim for unreasonable seizure brought against Thomas and CCRS;[4] (2) a Fourth Amendment claim for

---

[4] Hitt's filings invoke both the Fourth and Fourteenth Amendments as a basis for asserting claims for unlawful arrest and/or false imprisonment. *See, e.g.*, Obj. [#50] at 18. One of the Court's prior orders referred to

unreasonable seizure brought against McLane in her official capacity; (3) a Fourteenth Amendment procedural due process claim brought against McLane in her official capacity; (4) a First Amendment freedom of association claim brought against McLane in her official capacity; (5) a Fifth Amendment self-incrimination claim brought against McLane in her official capacity; and (6) a Fourth Amendment unreasonable search claim brought against McLane in her official capacity.

Hitt now moves to amend his complaint for the third time, and all parties move for summary judgment. Hitt Mot. Summ. J. [#64]; McLane Mot. Summ. J. [#65-1]; CCRS Mot. Summ. J. [#66]. These pending motions are ripe for review.

**Analysis**

**I.    Motion for Leave to Amend Complaint**

This Court previously dismissed Hitt's claims against McLane in her personal capacity on the ground Hitt had failed to allege facts indicating McLane was personally involved in the constitutional deprivations complained of by Hitt. Order of March 11, 2018 [#52] at 8. Hitt now seeks leave to amend his complaint to add allegations regarding McLane's personal involvement in the denial of Hitt's constitutional rights. Mot. Amend [#63] at 1.

The Court denies Hitt's motion for leave to amend. Hitt has failed to include an executed copy of his proposed amended complaint as required by Local Rule CV-7(b), and, as a result, the Court is unable to judge the merits of Hitt's motion or to determine whether amendment would be futile. This alone is a sufficient basis for the denial of Hitt's motion, but additional considerations also counsel against allowing Hitt to amend his complaint. All parties have already filed motions for summary judgment on Hitt's remaining claims, and this case is

---

these claims in aggregate as "federal false arrest and false imprisonment" claims. They are more accurately characterized as consisting of two distinct types of claims: Fourth Amendment claims for unreasonable seizure and Fourteenth Amendment claims for deprivation of liberty without due process of law.

4

currently set for trial next month. In this context, any amendments to Hitt's complaint would be prejudicial to the remaining defendants, and for this additional reason, Hitt's motion for leave to amend is DENIED.

## II. Motions for Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party

opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

In the interest of efficiency and because the parties' motions for summary judgment overlap substantially, the Court proceeds by evaluating the parties' motions for summary judgment on a claim by claim basis. The Court will first evaluate the claims against Thomas and CCRS. It then turns to the claims brought against McLane in her official capacity as Executive Director of the Texas Civil Commitment Office.

### A. Claims Against Thomas and CCRS

Thomas and CCRS move for summary judgment on the claims brought against them. CCRS Mot. Summ. J. [#66]. Hitt also moves for summary judgment on the same claims. Hitt Mot. Summ. J. [#64] at 15–18. The Court first examines the claims brought against Thomas in his individual capacity and then addresses the claims brought against CCRS.

1. **Thomas—Individual Capacity**

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Thomas and CCRS contend Thomas is entitled to summary judgment on the claims brought against him in his individual capacity because Hitt has failed to present any evidence showing Thomas was personally involved in Hitt's detention. CCRS Mot. Summ. J. [#66] at 5–6.

The Court agrees Thomas is entitled to summary judgment on this claim. In his own motion for summary judgment, Hitt clarifies he brought claims against Thomas because Thomas "was the Facility Director at the time Hitt's complaint was filed." Hitt Mot. Summ. J. [#64] at 16. While Thomas's position at the TCCC may support a claim against Thomas in his official capacity, it is insufficient to demonstrate the sort of personal involvement necessary to establish a claim against Thomas in his individual capacity, *see Thompson*, 709 F.2d at 283, and Hitt does not otherwise allege or point to facts suggesting Thomas had any personal involvement in Hitt's initial detention. *See* Hitt Mot. Summ. J. [#64] at 16–17; Am. Compl. [#3] at 6, 13, 15. The Court therefore GRANTS Thomas and CCRS's motion for summary judgment with respect to the claims brought against Thomas in his individual capacity.

2. **CCRS**[5]

Private actors are susceptible to suit under § 1983 when they perform traditionally governmental functions. *See Evans v. Newton*, 382 U.S. 296, 299 (1966) ("[W]hen private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the state."). Because neither party has addressed the

---

[5] Hitt also purports to bring a parallel claim against Thomas in his official capacity. Am. Compl. [#3] at 5–6. This official capacity claim is redundant with Hitt's claim against CCRS. *Kentucky v. Graham*, 473 U.S. 159 at n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for . . . local government units can be sued directly for damages and injunctive or declaratory relief."). As these claims are for practical purposes identical, the Court's analysis herein applies to both claims.

7

matter, the Court assumes without deciding that in administering the TCCC, CCRS performs a government function. *Cf. Rosborough v. Management & Training Corp.*, 350 F.3d 459 (5th Cir. 2003) (per curiam) ("[T]he Supreme Court has suggested . . . that state prisoners might bring suit under § 1983 against privately owned correctional facilities.").

As a private corporation performing an ostensibly governmental function, CCRS may be liable under § 1983 if CCRS propagated an official policy or custom giving rise to a constitutional violation. *Bennet v. City of Slidell*, 728 F.2d 762, 766 (5th Cir. 1984) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *Olivas v. Corrections Corp. of Am.*, 408 F. Supp. 2d 251, 254–55 (N.D. Tex. 2006) ("The standards applicable to determining liability under § 1983 against a municipal corporation are applicable to determining the liability of a private corporation performing a government function."). In order to state a claim against a municipal or private corporation under § 1983, Hitt must identify: (1) a policymaker; (2) an official policy; and (3) a "violation of constitutional rights whose 'moving force' is the policy." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694). Official policy may be found in "written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson*, 588 F.3d at 847; *Piotrowski*, 237 F.3d at 581–82.

Hitt contends he is entitled to summary judgment on his Fourth Amendment unreasonable seizure claim because CCRS "participated in his false imprisonment" and "should have known" Hitt had not been provided procedural due process when they transported him to the TCCC. Hitt Mot. Summ. J. [#64] at 15–18. In turn, CCRS argues it is entitled to summary judgment because Hitt has failed to identify an unconstitutional policy or practice which served

as a "moving force" behind the constitutional violation complained of by Hitt. CCRS Mot. Summ. J. [#66] at 6–8.

The Court agrees CCRS is entitled to summary judgment because Hitt has failed to present evidence suggesting the existence of an unconstitutional policy or practice implemented by CCRS. CCRS does not exercise discretion in deciding whether or not to accept residents at the TCCC. CCRS Mot. Summ. J. [#66-1] Ex. 1 (Woods Aff.) at 1–2. Rather, CCRS takes civil committees into custody exclusively at the direction of the TCCO. *Id.* [#66-2] (Thomas Aff.) at 1 ("TCCO controls Plaintiff's movement into or out of confinement at the TCCC . . . ."). Additionally, CCRS only accepts residents at the TCCC who, like Hitt, are shown to be subject to an order of commitment requiring them to reside where instructed by the TCCO. *Id.* at 2; Am. Order Civil Commitment at 2–3.

Hitt does not suggest any of these procedures are constitutionally deficient but instead contends CCRS "should have known" Hitt had not been provided procedural due process prior to his transfer to the TCCC. Hitt Mot. Summ. J. [#64] at 15–18. Yet Hitt does not explain why or how CCRS should have known of this alleged procedural shortcoming, nor does he indicate CCRS had any ability to provide the procedural due process Hitt contends he is due. *Id.* In short, Hitt has failed to identify any unconstitutional policy or practice on the part of CCRS, much less explain how such policy or practice might constitute the "moving force" behind the constitutional violations complained of by Hitt. Accordingly, the Court GRANTS CCRS's motion for summary judgment with respect to the claims brought against CCRS and against Thomas in his official capacity.

B.  **Claims Against McLane**

1.  **Fourth Amendment Unreasonable Seizure Claim**

Hitt contends he has been falsely imprisoned by the TCCO without legal authority and in violation of the Fourth Amendment. Am. Compl. [#3] at 14; Resp. McLane Mot. Summ. J. [#87] at 3–4. McLane, meanwhile, contends Hitt's Fourth Amendment claim "is simply a different way of describing his procedural due process claim." McLane Mot. Summ. J. [#65-1] at 7. Alternatively, McLane argues Hitt was taken into custody pursuant to valid legal authority because Hitt's amended order of civil commitment requires Hitt to reside where directed by the TCCO. *Id.* at 6.

As an initial matter, a Fourth Amendment claim for unreasonable seizure is distinct from a Fourteenth Amendment procedural due process claim. For example, a person who is properly arrested but held indefinitely without a hearing might bring a Fourteenth Amendment claim for deprivation of procedural due process. *See Jauch v. Choctaw Cty.*, 874 F.3d 425, 429–30 (5th Cir. 2017). Conversely, a person who is improperly arrested without probable cause or a court order, but who receives an immediate hearing and is released the same day, might bring a Fourth Amendment claim for unreasonable seizure. *See id.*

Here, Hitt has brought both Fourteenth Amendment and Fourth Amendment claims. He alleges he was seized without probable cause or proper legal authorization *and* subsequently held without receiving a hearing or other procedural due process. *See* Am. Compl. [#3] at 11 (alleging defendants lacked legal authority to arrest Hitt); Hitt Mot. Summ. J. [#64] at 2 ("To this date, the Defendants have yet to provide Hitt with a Procedural Due Process Hearing[] . . . ."). McLane is thus mistaken in conflating the two claims.

10

Further, McLane has failed to present evidence showing the TCCO possessed legal authority to take Hitt into custody. McLane argues Hitt was properly taken into custody because Texas Health and Safety Code § 841.082(a)(1) and Hitt's amended order of civil commitment require Hitt to reside where instructed by the TCCO. McLane Mot. Summ. J. [#65-1] at 6. This confuses the issue. Though the TCCO may possess the power to designate Hitt's residence, it does not follow that the TCCO also possesses the power to forcibly relocate Hitt to the designated residence without legal process. Neither Hitt's amended order of civil commitment nor the SVP Act provide the TCCO may seize and confine a civil committee at the TCCC simply because the TCCO has changed the civil committee's designated residence.

In fact, to the contrary, Texas Health and Safety Code § 841.0837 provides that in order to transfer a committed person to a more restrictive setting, the TCCO must "issue an emergency detention order for the person's immediate apprehension and transportation to a location designated by the office." Alternatively, if the TCCO had instructed Hitt to inpatient treatment at the TCCC and Hitt had not complied, the TCCO might have arrested Hitt for failure to reside where instructed by the TCCO as required by § 841.082(a)(1). *See id.* § 841.082(a)(1) (requiring civil committees to "reside where instructed by the office"); Am. Order Civil Commitment at 3 ("Failure to strictly comply with the requirements imposed by Tex. Health & Safety Code § 841082(a)(1)[] . . . may result in a third-degree felony[] . . . .").

There is no indication in the record the TCCO ever issued an emergency detention order for Hitt, nor is there any indication the TCCO gave Hitt an opportunity to voluntarily report to the TCCC before forcibly seizing Hitt and imprisoning him at the Travis County Correctional Complex pending transport to inpatient treatment. Because McLane has failed to present evidence indicating the TCCO possessed legal authority to initially take Hitt into custody, her

motion for summary judgment on Hitt's Fourth Amendment unreasonable seizure claim is DENIED.

### 2. First Amendment Freedom of Association

Restrictions on civil committees' freedom of association are valid if reasonably related to the state's interest in "security, order, and rehabilitation." *Bohannan v. Doe*, 527 F. App'x 283, 294–95 (5th Cir. 2013) (per curiam); *see also United States v. Shultz*, 733 F.3d 616, 622 (6th Cir. 2013) (holding supervised release conditions affecting constitutional rights are acceptable if directly related to state interests in rehabilitation and security).

Both Hitt and McLane have moved for summary judgment on Hitt's First Amendment freedom of association claim. Hitt's sole argument in support of summary judgment is that McLane has violated his "right to engage in adult consensual sexual activity," though he does not explain how McLane has violated this right. Hitt Mot. Summ. J. [#64] at 11. In turn, McLane contends she is entitled to summary judgment on Hitt's First Amendment freedom of association claim because the restrictions placed upon Hitt are reasonably related to the state's interest in rehabilitating Hitt and protecting the public. McLane Mot. Summ. J. [#65-1] at 9; Latham Aff. at 18–21.

The Court agrees the restrictions placed upon Hitt are reasonably related to the state's interest in rehabilitating Hitt and protecting the public. The TCCO does not categorically ban sexual activity between consenting adults. Civil Commitment Rules at 5. Rather, the TCCO merely requires Hitt to inform potential sexual partners of his prior offenses and permit the TCCO to communicate with the partner "prior to engaging in sexual contact." *Id.* These requirements further the state's goal of protecting the public by ensuring potential sexual partners are aware of the risks posed by engaging in sexual activity with an individual adjudged

to be a sexually violent predator. Hitt does not articulate how or why he believes these conditions are unreasonable, *see* Resp. McLane Mot. Summ. J. [#87] at 6, nor does he present any evidence indicating the TCCO unreasonably withheld approval to engage in sexual contact in this particular instance. Accordingly, the Court finds the conditions imposed by the TCCO are constitutionally permissible because they are reasonably related to the state's interest in rehabilitating Hitt and protecting the public. The Court therefore GRANTS McLane's motion for summary judgment on Hitt's First Amendment freedom of association claim.

### 3. Fifth Amendment Self-Incrimination

Hitt seeks summary judgment on his Fifth Amendment claim and contends McLane denied him his Fifth Amendment right against self-incrimination by requiring Hitt to undergo a polygraph examination when he refused to answer questions regarding his sexual contact with a consenting adult and by transferring Hitt to inpatient treatment after he failed the polygraph. Am. Compl. [#3] at 15. Hitt further alleges he was not allowed to refuse to answer questions during the polygraph examination, though this allegation is undercut by the fact Hitt contemporaneously signed a polygraph agreement acknowledging his right to refuse to answer incriminating questions during examination. *Id.*; McLane Mot. Summ. J. [#65-7] Ex. F (Polygraph Agreement) at 3. For her part, McLane argues Hitt's Fifth Amendment claim fails as a matter of law because Hitt has failed to present any evidence or argument indicating there was a risk of self-incrimination. McLane Mot. Summ. J. [#65-1] at 11.

A probationer or civil committee "may only invoke the Fifth Amendment privilege if a truthful answer would incriminate the probationer [or civil committee] by exposing him to

prosecution for a different crime."[6] *United States v. Locke*, 482 F.3d 764, 767–68 (5th Cir. 2007). Given the Fifth Amendment's emphasis on exposure to criminal prosecution, it is irrelevant whether a truthful answer might reveal a violation of a condition of probation or supervision or lead to revocation of supervised release. *Id.* at 767 (holding Fifth Amendment does not apply to suppress probationer's admission he had violated conditions of probation because, while the admission led to revocation of probation, it "could not serve as a basis for a future criminal prosecution); *see also Minnesota v. Murphy*, 465 U.S. 420, 435 & n.7 (1984) (suggesting probationer cannot invoke Fifth Amendment privilege solely because a truthful answer might lead to revocation of probation").[7] Thus, a probationer or civil committee may not refuse to answer a question simply because a truthful answer might reveal a violation of a condition of probation or supervision, unless the answer would *also* tend to increase exposure to prosecution for a different crime.

McLane is entitled to summary judgment on Hitt's Fifth Amendment claim because Hitt has not presented argument or evidence suggesting the questions asked before or during the polygraph examination had any tendency to incriminate Hitt by exposing him to future prosecution for a different crime. The Polygraph Agreement signed by Hitt indicates the questions at issue related to whether Hitt had violated TCCO rules by engaging in unreported physical or sexual contact with a consenting adult, Maria Lopez. Polygraph Agreement at 3; *see*

---

[6] As Hitt repeatedly analogizes his situation to that of a probationer, the Court assumes without deciding that the same Fifth Amendment standards apply to a civil committee as to a probationer. *See, e.g.*, Hitt Mot. Summ. J. [#64] at 6, 9, 15.

[7] Moreover, even where a truthful answer might tend to expose a probationer or civil committee to the threat of future prosecution for a different crime, the TCCO might arguably nevertheless require an answer so long as the probationer or civil committee retains the right to assert the privilege against self-incrimination in a future proceeding. *Murphy*, 465 U.S. at 435 n.7 ("Our cases indicate, moreover, that a state may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding . . . ."); *United States v. Ramos*, 685 F.3d 120, 126–27 (2d Cir. 2012) ("[A] condition requiring polygraph tests for defendants convicted of sex crimes does not violate the right against self-incrimination as long as the supervisee retains the right to challenge in a court of law the use of incriminating statements as violations of his Fifth Amendment rights.").

*also* Am. Compl. [#3] at 11 ("McLane ordered Plaintiff to admit that he had engaged in sexual contact with Maria Lopez."). While this unreported sexual contact with another consenting adult might have violated a condition of supervision imposed upon Hitt by the TCCO, it is not a crime, and Hitt has not otherwise explained how his answers to the questions posed by the TCCO might have incriminated him. Because Hitt's answers to these questions would not have incriminated him by exposing him to prosecution for a different crime, Hitt was not entitled to invoke the Fifth Amendment. *See Locke*, 482 F.3d at 767–68 (finding no Fifth Amendment violation where questions merely "attempted to ascertain whether [the probationer] had violated conditions of his probation"). The Court therefore GRANTS McLane's motion for summary judgment on Hitt's Fifth Amendment claim.[8]

### 4. Fourth Amendment Unreasonable Search

McLane argues she is entitled to summary judgment on Hitt's Fourth Amendment unreasonable search claim because any search of Hitt's property or residence is reasonable as a matter of law. McLane Mot. Summ. J. [#65-1] at 11–12. Meanwhile, Hitt contends he is entitled to summary judgment because the state statute allowing the TCCO to impose supervisory conditions upon Hitt, Texas Health and Safety Code § 841.082(4), is facially invalid under the Fourth Amendment. Hitt Mot. Summ. J. [#64] at 13.

Civil committees are entitled to Fourth Amendment protection from unreasonable searches. *Cf. United States v. LeBlanc*, 490 F.3d 361, 365 (5th Cir. 2007) ("A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches and intrusions upon privacy be reasonable."). "[T]he reasonableness of a search is determined by

---

[8] As the Court concludes Hitt was not entitled to assert the Fifth Amendment in response to the questions posed by TCCO, it is unnecessary to reach the remaining arguments put forward by Hitt in support of his motion for summary judgment on his Fifth Amendment claim. Nevertheless, the Court notes in passing that the Fifth Circuit has approved the administration of polygraph examinations as a condition of supervision. *LeBlanc*, 490 F.3d at 365–66 (deeming polygraph tests a permissible condition of probation).

assessing, on the one hand, the degree to which it intrudes upon an individual's privacy, and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 118–19 (2001). This assessment requires the court to consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 558–59 (1979)

The Court concludes neither party is entitled to summary judgment on Hitt's Fourth Amendment unreasonable search claim. As an initial matter, Hitt is clearly mistaken in arguing § 841.082(4) is facially unconstitutional under the Fourth Amendment. For one, § 841.082(4) says nothing about searches of civil committees' residences. Rather, § 841.082(4) relates to the TCCO's authority to impose supervisory conditions upon civil committees. Hitt provides no support for his contention that § 841.082(4) must reiterate Fourth Amendment legal standards for conducting searches of civil committees, and the Court finds the contention to be without merit. If Hitt wishes to demonstrate an unreasonable search was conducted, he must either explain how the TCCO search condition imposed under § 841.082(4) is unreasonable, or, if the condition is reasonable, he must explain why he believes the actual searches conducted upon his property were nevertheless unreasonable. *See LeBlanc*, 490 F.3d at 366. Because Hitt has done neither, the Court DENIES his motion for summary judgment on his Fourth Amendment unreasonable search claim.

McLane's argument in favor of summary judgment is similarly unconvincing. McLane appears to argue any search of Hitt's property would be reasonable because Hitt is a civil committee. McLane Mot. Summ. J. [#65-1] at 11–12. To the contrary, however, civil committees are subject to search consistent with the Fourth Amendment only to the extent such searches are

16

reasonable. *Cf. Knights*, 534 U.S. 112, 118–19 (noting reasonableness of a search under the Fourth Amendment is determined by "examining the totality of the circumstances" (internal quotation marks omitted)); *Beauliau v. Ludeman*, 690 F.3d 1017, 1028 (8th Cir. 2012) ("[I]nvoluntarily civilly committed persons retain the Fourth Amendment right to be free from unreasonable searches . . . ."). Though Hitt's status as a civil committee and his related supervisory conditions are both considerations to be weighed in determining whether a search was reasonable, McLane cannot elide the Fourth Amendment's mandate that a search be reasonable simply by pointing to the state's interest in security and rehabilitation. Because McLane has not pointed to any facts indicating the searches complained of by Hitt were reasonable, the Court DENIES summary judgment

## Conclusion

The Court grants Thomas and CCRS's motion for summary judgment, denies Hitt's motion for summary judgment, and grants McLane's motion for summary judgment as to Hitt's First Amendment and Fifth Amendment claims. Hitt's remaining claims are as follows: (1) a Fourteenth Amendment procedural due process claim brought against McLane in her official capacity;[9] (2) a Fourth Amendment unreasonable seizure claim brought against McLane in her official capacity; and (3) a Fourth Amendment unreasonable search claim brought against McLane in her official capacity.

This case is currently set for bench trial on July 12, 2018. *See* Order of March 15, 2018. However, McLane has again failed to provide any evidence or argument shedding light on Hitt's Fourth Amendment claims, let alone demonstrate that McLane is entitled to judgment on those claims as a matter of law. As a result, genuine issues of material fact remain as to both of Hitt's

---

[9] McLane did not seek summary judgment on Hitt's Fourteenth Amendment procedural due process claim and the Court has not addressed it here.

17

Fourth Amendment claims, and because Hitt has requested a jury trial, the Court cannot rule on those claims at a bench trial. For this reason, the Court cancels the bench trial scheduled for July 12, 2018 and will instead hold a hearing. Both parties should come prepared to discuss the factual issues implicated by the remaining claims in this case as well as the status of this case going forward.

Accordingly,

IT IS ORDERED that Plaintiff Jonathan Hitt's Motion to Amend [#63] is DENIED;

IT IS FURTHER ORDERED that Thomas and CCRS's Motion to Supplement Motion for Summary Judgment [#67] is GRANTED;

IT IS FURTHER ORDERED that McLane's Motions to Seal [#65, #74] are GRANTED;

IT IS FURTHER ORDERED that Hitt's Motion for Partial Summary Judgment [#64] is DENIED;

IT IS FURTHER ORDERED that Thomas and CCRS's Motion for Summary Judgment [#66] is GRANTED;

IT IS FURTHER ORDERED that McLane's Motion for Partial Summary Judgment [#65-1] is GRANTED IN PART and DENIED IN PART; and

IT IS FURTHER ORDERED that Hitt's Unopposed Motion for Continuance [#90] is GRANTED; the bench trial set for July 12, 2018 is CANCELLED; and this case is SET for trial, jury or non-jury, in the month of **November 2018** with docket call on **October 26, 2018, at 11:00 a.m.** in Courtroom 2, on the Fourth Floor of the United States Courthouse, 501 West Fifth Street, Austin, TX;

IT IS FURTHER ORDERED that, prior to docket call, the parties shall file a short, one paragraph statement of the parties' contentions, voir dire questions, proposed jury instructions and verdict forms, exhibit and witness lists, and any motions in limine;

IT IS FURTHER ORDERED that Hitt's Motion for Expedited Hearing [#91] is DISMISSED; and

IT IS FINALLY ORDERED that the hearing set for July 12, 2018 at 9:30 a.m. is CANCELED.

SIGNED this the 22nd day of June 2018.

/s/ Sam Sparks
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE